United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| McKESSON CORP., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> HEALTH ROBOTICS, S.R.L., <br><br> Defendant. <br> _____/ | Case No. C-11-00728 JCS <br><br> **ORDER GRANTING DEFENDANT HEALTH ROBOTICS S.R.L.'s MOTION TO (1) DISMISS PLAINTIFFS McKESSON CORPORATION AND McKESSON AUTOMATION. INC.'s COMPLAINT; OR IN THE ALTERNATIVE (2) STAY PENDING ARBITRATION [Docket No. 10], DISMISSING CLAIMS IN FAVOR OF ARBITRATION AND VACATING JULY 29, 2011 HEARING AND CASE MANAGEMENT CONFERENCE** |

## I.   INTRODUCTION

This dispute arises out of a license agreement between an Italian company, Health Robotics, S.R.L. ("HRSRL") and a Pennsylvania company, McKesson Automation, Inc. The license agreement contains an arbitration clause providing that disputes shall be resolved by binding arbitration in Geneva, Switzerland. The license agreement also contains an exception to the arbitration requirement, however, allowing either party to seek injunctive relief or equitable remedies "from any court of competent jurisdiction." Whether McKessons' claims in this action fall within the exception for equitable remedies is the subject of the instant Motion. In particular, HRSRL brings a Motion to (1) Dismiss Plaintiffs McKesson Corporation and McKesson Automation. Inc.'s Complaint; or in the Alternative (2) Stay Pending Arbitration ("the Motion"), asking the Court to dismiss McKesson's claims on the basis that they are subject to binding arbitration under the license agreement. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). For the reasons stated

below, the Motion is GRANTED. The Court **vacates** the motion hearing and case management conference set for **July 29, 2011 at 9:30 a.m.**

## II. BACKGROUND

### A. Facts[1]

Defendant HRSRL is a medical device company. Complaint, ¶ 1. It is incorporated in Italy and has its principal place of business in Bozen, Italy. *Id*. ¶ 7. Plaintiffs McKesson Corporation and its wholly owned subsidiary McKesson Automation, Inc. (hereinafter, referred to collectively as "McKesson"), are drug wholesalers that distribute medical supplies and pharmaceuticals to entities within the healthcare industry. *Id*., ¶¶ 5-6. McKesson Corporation is incorporated under the laws of Delaware, while McKesson Automation, Inc. is incorporated under the laws of Pennsylvania. *Id*.

On August 7, 2009, McKesson entered into an Exclusive Licensing, Manufacturing, Services and Distribution Agreement ("License Agreement") by which HRSRL purported to give McKesson an exclusive license to manufacture and distribute HRSRL's CytoCare product in the United States and Canada for a term of up to five years. *Id*., ¶ 1 & Ex. A (License Agreement). The License Agreement contained a "Warranty of Title" provision in which HRSRL "represent[ed] and warrant[ed]" that it had the authority to grant the exclusive license to McKesson. *Id*., ¶ 13. In reliance on this representation, McKesson entered into the License Agreement and placed an order to purchase 40 units of CytoCare at a total price of $5,000,000, to be paid in installments at six month intervals, commencing August 15, 2009. *Id*. ¶ 14. In May 2010, the License Agreement was amended to add additional products to the license. *Id*. ¶ 16. In October 2010, an additional amendment to the License Agreement included an acceleration of payment of the licensing fees owed by McKesson. *Id*. ¶ 20. In total, McKesson paid $3,600,000.00 in licensing fees to HRSRL. *Id*., ¶ 21. In addition, McKesson spent $366,554 in manufacturing and engineering costs,

---

[1] For the purposes of the instant motion, the Court assumes the facts alleged in the complaint to be true. *See Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir.2006) (on a motion to dismiss, well-pleaded facts deemed true). Further, the Court may consider the terms of the License Agreement in deciding the Motion without converting it to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because the License Agreement was attached to the Complaint and expressly referenced therein. *See In re Bare Escentuals, Inc. Securities Litigation*, 745 F. Supp.2d 1052, 1056 (N.D. Cal. 2010) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 569 (2007)).

approximately $1,296,875 for marketing and product management, and approximately $1,640,694 for product operations and support. *Id*

In November 2010, McKesson discovered that HRSRL did not have the authority to grant McKesson exclusive rights to CytoCare because another Italian company owned a significant percent of the essential software for the CytoCare product and intended to exploit its rights in North America. *Id*. ¶¶ 25-26. Had McKesson known that HRSRL did not have the authority to grant an exclusive license for its product, McKesson would not have entered into the License Agreement. *Id*., ¶ 39. Accordingly, McKesson initiated the instant action, asserting the following claims: 1) Rescission of Contract Due to Fraudulent Inducement; 2) Rescission of Contract Due to Failure of Consideration; 3) Unfair Business Practices under Cal Bus. & Prof. Code §§ 17200 *et seq.*; and 4) Accounting. In the Complaint, McKesson requested the following remedies: 1) entry of an order declaring that HRSRL obtain McKesson's consent to the License Agreement through fraud; 2) entry of an order declaring that McKesson is entitled to rescind the License Agreement; 3) restitution; 4) an accounting; 5) attorneys' fees and costs; 6) entry of an order imposing a constructive trust on HRSRL; and 7) any other equitable remedies the Court deems proper.

### B. Provisions of License Agreement Relating to Arbitration and Choice of Law

The arbitration provision of the License Agreement is contained in Section 30, which provides, in relevant part, as follows:

> **30. Dispute Resolution**. Any claim arising out of or relating to this AGREEMENT or its subject matter or any right or obligation created by this AGREEMENT, irrespective of the legal theory or claims underlying such dispute (including tort or statutory claims) ("DISPUTE") will be resolved in accordance with this Section 31.[2] The PARTY asserting the DISPUTE will give prompt notice to the other PARTY describing the DISPUTE in reasonable detail ("DISPUTE NOTICE"). Each PARTY agrees not to commence court proceedings against the other PARTY relating to a DISPUTE, except that the provisions of this Section will not prevent a PARTY from commencing court proceedings seeking injunctive relief for DISPUTES related to Intellectual Property Rights. Promptly after receipt of the DISPUTE NOTICE, the PARTIES will negotiate in good faith to resolve the DISPUTE. . . . If the DISPUTE has not been resolved within forty (40) days after receipt of the DISPUTE NOTICE, then either PARTY, by notice to the other PARTY, will refer the DISPUTE for exclusive, binding and final resolution by arbitration. Any arbitration shall be conducted in English under the rules of the International Chamber of Commerce by a single,

---

[2]The Court assumes that the reference to Section 31 is a typographical error and that the parties intended to refer to Section 30.

3

mutually agreed-to arbitrator and shall be held in Geneva, Switzerland . . . Notwithstanding the foregoing, either PARTY may elect to seek injunctive relief or other equitable remedies against the other PARTY from any court of competent jurisdiction, without waiving the PARTY's right to arbitrate disputes for money or damages.

Complaint, Ex. A (Agreement), Section 30.

Section 31 governs claims for equitable relief and provides as follows:

**31.**   **Consent to Equitable Relief**

**31.1.**   If LICENSEE breaches any obligation of the opening paragraph of Section 8 of this AGREEMENT, the LICENSOR shall be entitled to seek temporary restraining orders, preliminary and permanent injunctions, specific performance, and/or other equitable relief as necessary to enjoin or equitably remedy the conduct in breach. The availability or election of equitable remedies shall be in addition and without prejudice to any other remedies available to LICENSOR.

**31.2.**   If either PARTY breaches any obligation of Section 14 of this AGREEMENT, then the non-breaching PARTY shall be entitled to seek temporary restraining orders, preliminary and permanent injunctions, specific performance and/or other equitable relief as necessary to enjoin or equitably remedy the conduct in breach. The availability or election of equitable remedies shall be in addition and without prejudice to any other remedies available to the non-breaching PARTY.

*Id.*, Section 31. Section 8 contains the terms of the license, while Section 14 governs confidentiality obligations. *Id.*, Section 8 ("Grant of Limited Software License") & 14 ("Confidential Information and Proprietary Rights"). Finally, the License Agreement contains a provision stating that "[a]ll issues relating to this AGREEMENT shall be governed exclusively by the laws of Switzerland." *Id.*, Section 27.

**C.**   **The Motion**

In the Motion, HRSRL argues that McKesson, by characterizing its claims as "equitable," is improperly attempting to evade the License Agreement's arbitration clause, offending the strong public policy in favor of enforcing arbitration clauses, which is particularly salient in the context of international trade dispute resolution. Motion at 10-11. HRSRL argues that when the License Agreement is read as a whole, it is clear that the exception to the arbitration requirement for "injunctive relief or other equitable remedies" (hereinafter, "the Equitable Remedies Clause") that is referenced in the last sentence of Section 30 is a narrow exception that corresponds to the language

4

used earlier in that same section, allowing a party to commence court proceedings "seeking injunctive relief for DISPUTES related to Intellectual Property Rights." *Id*. at 11-12. At best, McKesson asserts, the language of the License Agreement creates an ambiguity that must be construed in favor of arbitration. *Id*. at 12 (citing *Comedy Club, Inc. v. Improv West Assocs.*, 554 F.3d 1277 (9th Cir. 2009). HRSRL argues that *Comedy Club* is consistent with a "long line of cases in this and other circuits in rejecting 'equitable remedy' language as a means to avoid arbitration clauses." *Id*. at 13 (citing *Dominguez v. Andrew Corp.*, 2007 U.S. Dist. LEXIS 91062 (N.D. Cal. Dec. 4, 2007); *Children's Orchard v. Children's Orchard Store*, 2010 U.S. Dist. LEXIS 52760 (E.D. Mich. May 28, 2010); *WMT Inv., LLLC v. Visionwall Corp.*, 2010 U.S. Dist. LEXIS 65869 (S.D.N.Y. June 28, 2010); and *Clarus Med., LLC v. Myelotec, Inc.,* 2005 U.S. Dist. LEXIS 30540 (D. Minn. Nov. 30, 2005)).

HRSRL further asserts that McKesson's attempt to avoid arbitration is particularly weak because McKesson is not seeking to preserve the status quo – a reason that courts have recognized may justify permitting an exception to an arbitration requirement – but rather, is seeking to alter the status quo by rescinding the License Agreement and obtaining an order awarding the payment of money. *Id*. at 14-15 (citing *Toyo Tire Holdings of Am. v. Continental Tire N.A., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010)). Finally, HRSRL asserts that all of McKesson's claims, and particularly Claim Three (asserted under the California Business and Professions Code) fail to state a claim because they are based on California law whereas the License Agreement specifies that all issues relating to the agreement are to be governed by the law of Switzerland. *Id*. at 15.

In its Opposition, McKesson argues that the License Agreement expressly exempts claims seeking equitable remedies and that its claims fall squarely within that exception because rescission, restitution and accounting are equitable claims, and claims under the California Business and Professions Code also are considered equitable in nature. Opposition at 4. According to McKesson, courts "routinely apply arbitration provisions of this nature to permit actions for equitable remedies in court." *Id*. at 4-5 (citing *Med. Creative Techs. v. Dexterity Surgical, Inc.*, 2004 U.S. Dist. LEXIS 11304, at \*6 (E.D. Pa. Feb. 24, 2005); *Mastercard Int'l, Inc. v. Fed'n Internationale de Football*

5

*Ass'n*, 2007 U.S. Dist. LexiS 14208, at *4 (S.D.N.Y. Feb. 28, 2007); and *Floorcoverings Int'l Ltd. v. Swan*, 2000 U.S. Dist. LEXIS 5855, at *10-11 (N.D. Ill. Apr. 25, 2000)). Because the parties did not agree that equitable claims would be subject to arbitration, McKesson asserts, no federal policy favors arbitration. *Id*. at 5. Such a policy, McKesson argues, comes into play only when the arbitration provision is ambiguous and that is not the case here. *Id*.

McKesson rejects HRSRL's position that the scope of the Equitable Remedies Clause of Section 30 is limited by the earlier reference in that section to "injunctive relief for DISPUTES related to Intellectual Property Rights." *Id*. at 6-7. Rather, McKesson argues, the use of the words "other equitable remedies" in the Equitable Remedies Clause indicates that the exception is separate from, and in addition to, the exception for injunctive relief. *Id*. at 7. McKesson argues that its interpretation of the Equitable Remedies Clause finds further support in the fact that the License Agreement specifies that arbitration will occur in Switzerland under Swiss law. *Id*. at 7. Because Switzerland has a civil law system, it does not recognize "equitable remedies" or the law-equity distinction. *Id*. Therefore, McKsson argues, "the agreement plainly did not intend for *all* disputes, including those seeking equitable remedies, to be decided by arbitration." *Id*. Finally, McKesson points to the severability provision in the License Agreement in support of its interpretation of the Equitable Remedies Clause. That provision states as follows:

> **25.   Severability.** If *a court* of competent jurisdiction declares any other term of this AGREEMENT invalid or unenforceable, then the remaining terms shall continue in full force and effect.

*Id*. (citing License Agreement, Section 25)(emphasis added by McKesson). According to McKesson, "[t]his provision expressly recognizes that the jurisdiction of courts extends not only to claims for temporary injunctive relief pending arbitration or even just to intellectual property disputes, but also to claims that the contract is 'invalid or unenforceable.'" *Id*.

McKesson also challenges HRSRL's assertion that under *Comedy Club* the arbitration provision in this case is ambiguous, arguing that the arbitration provision in *Comedy Club* contains language that renders that case distinguishable. *Id*. at 8. Similarly, McKesson argues that the district court cases cited by HRSRL to support its interpretation of the Equitable Remedies Clause,

6

*Dominguez*, *Children's Orchard*, *Clarus* and *WMT Investors, LLC*, are not on point because in each of those cases, the language of the agreements with respect to equitable remedies was narrower than the language in this case. *Id*. at 9-10.

McKesson further asserts that all of its claims state a claim because the provision requiring the application of Swiss law, Section 27 of the License Agreement, clearly was not intended to apply to claims for equitable remedies asserted in a court rather than arbitration. In support of this conclusion, McKesson cites to the fact that Swiss law does not recognize the distinction between law and equity, and therefore, the exception for equitable claims could not fall within the choice of law provision in the License Agreement. *Id*. at 10-11.

In its Reply, HRSRL disputes McKesson's characterization of its claims as "equitable," citing to the Supreme Court's instruction in *Great-West Life Annuity & Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) that courts must examine the nature of the claims and the relief sought to determine whether a claim is legal or equitable. Reply at 1-2. Under *Great-West Life*, a "suits seeking (whether by judgment, injunction or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages . . . [which are], of course, the classic form of legal relief." *Id*. (quoting 534 U.S. at 210). Thus, California courts do not apply labels automatically, HRSRL argues, but instead look to the overall nature of the action. *Id*. at 2. For example, California courts have expressly held that a prayer for rescission does not render a claim "equitable" where the only remedy sought is a money judgment. *Id*. (citing *Runyan v. Pac. Air Indus., Inc.*, 2 Cal. 3d 304, 313 (1970)). Similarly, they have noted that a claim for accounting "(much like a request for restitution) operates as a chameleon, assuming the nature of the action giving rise to it, rather than having a static character of its own." *Id*. (quoting *Siegel v. Warner Bros. Entm't*, 581 F. Supp. 2d 1067, 1071 (C.D. Cal. 2008)). In this case, HRSRL argues, McKesson's claims are legal in nature rather than equitable because McKesson is seeking a money judgment for breach of a legal duty that arises by virtue of the contract between the parties – in particular, HRSRL's alleged breach of the Warranty of Title provision. *Id*. at 3.

HRSRL rejects McKesson's reliance on the fact that Swiss law does not distinguish between law and equity to argue that its claims fall outside the scope of the arbitration provision, providing a declaration by an expert on Swiss law who opines that "[w]hile it is correct that Swiss law does not recognize 'equitable remedies,' this does not mean that persons subject to Swiss law are not entitled to 'equitable remedies' as they are recognized under US law." *Id*. (quoting Declaration of Professor Reto M. Hilty ("Hilty Decl."), ¶ 4). Professor Rilty further opines that "Swiss law recognizes the general claims and remedies that McKesson seeks in this action." Rilty Decl., ¶ 4. In particular, according to Professor Rilty, Article 97 of the Swiss Code of Obligations "provides for the obligation to compensate an aggrieved party if a party does not perform its contractual obligations." *Id*., ¶ 5. Further, "[i]n addition to recognizing monetary damages for breach of contract . . ., Swiss law allows for the remedy of withdrawal of the contract, which [is] equivalent to the remedy of 'rescission' pleaded by McKesson in the complaint." *Id*., ¶ 7. Because McKesson has an adequate remedy at law under Swiss law, HRSRL asserts, the exception for equitable claims does not apply to McKesson's claims. *Id*. at 3-5.

With respect to McKesson's assertion that there is a separate exception for equitable claims, in addition to the exception for injunctive relief, and that it encompasses *any* equitable claim, HRSRL asserts that this reading of Section 30 is contradicted by the last phrase of the section, "without waiving the PARTY's right to arbitrate disputes for money damages," which McKesson omitted from its quotation of the section. *Id*. at 5-6. When considered in its entirety, HRSRL argues, Section 30 makes clear that there is a single, limited exception for claims that are equitable in nature and do not seek money relief but rather, merely seek to preserve the status quo. *Id.* at 6-7. HRSRL also points to Section 31 of the License Agreement, entitled "Consent to Equitable Relief," which provides that if McKesson breaches the terms of the software license or either party breaches the contract's confidentiality provisions, then the non-breaching party may "seek temporary restraining orders, preliminary and permanent injunctions, specific performance, and/or other equitable relief as necessary to enjoin or equitably remedy the conduct in breach." *Id*. at 7 (quoting License Agreement, Section 31). According to HRSRL, Section 31 directly contradicts McKesson's

assertion that the equitable remedy exception extends to any claim that is labeled as "equitable." *Id*. Indeed, HRSRL argues, it would make no sense for the parties, "after having agreed to a broad and mandatory arbitration clause in a neutral forum under neutral law, . . .[to] then somehow step back and permit the broadest of claims to be brought in either party's home court simply by labeling the claim 'equitable.'" *Id*. at 7-8.

HRSRL rejects McKesson's argument that courts "routinely apply arbitration provisions of this nature to permit actions for equitable remedies in court." *Id*. at 11 (quoting Opposition at 4-5), In particular, HRSRL argues that none of the three cases cited by McKesson, *Med. Creative Techs. v. Dexterity Surgical, Inc.*, *Mastercard Int'l, Inc. v. Fed'n Internationale de Football Ass'n*, and *Floorcoverings Int'l Ltd. v. Swan*, establish that courts routinely permit parties who have agreed to arbitrate their disputes to bring court actions for money damages. *Id*. at 11-12.

HRSRL also rejects McKesson's assertion that the choice of law provision does not apply to equitable claims, noting that McKesson has not cited any authority in support of this interpretation of the provision, which is "unambiguous." *Id*. at 12-13.

### III. ANALYSIS

#### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740. 1748 (2011) (quoting *Volt Information Sciences, Inc. v. Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Conversely, parties to an agreement may agree to limit the issues that are subject to arbitration. *Id*. The Supreme Court has held that it is "beyond dispute that the FAA was designed to promote arbitration,"and has "repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the

contrary.'" *Id.* at 1748 (citations omitted). As a result of this policy, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Comedy Club*, 553 F.3d at 1277 (citations omitted). In deciding whether the parties agreed to arbitrate a particular issue, courts apply ordinary state law principles of contract construction." *Id.* (citation omitted).

In *Comedy Club*, the Ninth Circuit set forth the general principles of contract construction, as they relate to arbitration clauses, under California law:

> Under California contract law, "if the language [of a contract] is clear and explicit, and does not involve an absurdity" the language must govern the contract's interpretation. Cal. Civ.Code § 1638. Moreover, when a contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ.Code § 1639. "[I]f reasonably practicable" a contract must be interpreted as a whole, "so as to give effect to every part, ... each clause helping to interpret the other." Cal. Civ.Code. § 1641; see also *In re Affordable Hous. Dev. Corp.*, 175 B.R. 324, 329 (9th Cir. BAP 1994) ("California law provides that one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless."). However, "[i]f a contract is capable of two different reasonable interpretations, the contract is ambiguous," *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal.App.4th 1441, 1448, 66 Cal.Rptr.2d 487 (1997), and under the federal presumption in favor of arbitration, an arbitrator would have jurisdiction to arbitrate claims. See *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415; *Three Valleys*, 925 F.2d at 1139.

553 F.3d at 1285.

"Although a party seeking to enforce an agreement to arbitrate typically does so by filing a motion to compel arbitration, courts have recognized that a party may choose instead to bring a motion to dismiss under FRCP 12(b)(6)." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 931756 (N.D.Cal.,April 11, 2006) (citing *Sparling v. Hoffman Construction Co. Inc.*, 864 F.2d 635, 637-38 (9th Cir.1988)). In reviewing a motion to dismiss under Rule 12(b)(6), the Court assumes all factual allegations to be true and construes them in the light most favorable to the nonmoving party. *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 580 (9th Cir. 1983).

**B. Whether the License Agreement Requires that McKesson's Claims be Resolved by Binding Arbitration in Geneva Switzerland pursuant to the Procedures of the International Chamber of Commerce**

In order to avoid the arbitration provision of the License Agreement, McKesson asserts that the License Agreement clearly excludes the equitable claims that it asserts in this action, even

10

though it is seeking an order awarding money damages based on HRSRL's alleged breach of the Warranty of Title Provision in the contract. McKesson's position is not supported by the language in the License Agreement or the case law on which it relies.

McKesson's position is based on a single reference in Section 30 to "other equitable remedies." According to McKesson, this reference is sufficient to create an exception to the arbitration requirement for *any* equitable claim, without reference to the remedy sought or the underlying subject matter of the claim. This argument fails because it ignores the context in which the phrase is used, the remaining language used in Section 30, and the language of Section 31 regarding equitable remedies. In particular, the third sentence of Section 30 provides that "[e]ach PARTY agrees not to commence court proceedings against the other Party relating to a DISPUTE, except that the provisions of this Section will not prevent a PARTY from commencing court proceedings seeking injunctive relief for DISPUTES related to Intellectual Property Rights." McKesson's reading of the contract is in conflict with this limited exception to the arbitration requirement. Moreover, the sentence in which the Equitable Remedies Clause is used does not address the scope of the arbitration agreement but rather, the question of whether an equitable claim will result in waiver of the right to arbitrate claims for money damages. The following section, Section 31, which addresses consent to equitable remedies, similarly supports the conclusion that the exception to the arbitration requirement is a limited one. In particular, Section 31 limits the parties' consent to equitable claims to enforce Sections 8 (governing the software license) and 14 (governing confidential information and proprietary rights) of the License Agreement. The Court also rejects McKesson's assertion that the choice of Swiss law indicates that the parties intended to expand the limited exception to the arbitration provision that is expressly stated in Section 30 to include any claim that is characterized as equitable in a common law jurisdiction. Such an exception flies in the face of the language used in Sections 30 and 31 and would render virtually meaningless the language of those sections. In short, reading the License Agreement as a whole, the Court agrees with HRSRL that it requires arbitration of all claims except equitable claims to protect intellectual property rights, including McKesson's claims.

At best, the License Agreement is ambiguous as to whether McKesson's claims fall within the scope of the arbitration requirement. Although the Court finds strained McKesson's argument that the License Agreement creates a separate exception for equitable claims without limitation – including claims that seek money damages and therefore, arguably, should be classified as legal rather than equitable – to the extent that this interpretation might be found reasonable, the policy in favor of arbitration nonetheless requires that the arbitration clause be enforced as to McKesson's claims because HRSRL's interpretation of the contract is also reasonable. *See Comedy Club*, 553 F.3d at 1286; *see also Dominguez v. Andrew Corp.*, 2007 U.S. Dist. LEXIS 91062 (N.D. Cal. Dec. 4, 2007); *Children's Orchard v. Children's Orchard Store*, 2010 U.S. Dist. LEXIS 52760 (E.D. Mich. May 28, 2010); *WMT Inv., LLLC v. Visionwall Corp.*, 2010 U.S. Dist. LEXIS 65869 (S.D.N.Y. June 28, 2010); and *Clarus Med., LLC v. Myelotec, Inc.,* 2005 U.S. Dist. LEXIS 30540 (D. Minn. Nov. 30, 2005)).

Finally, the cases cited by McKesson to show that similar arbitration clauses have been interpreted consistent with McKesson's interpretation of the License Agreement are distinguishable because they contained different contract language.  *See Med. Creative Techs. v. Dexterity Surgical, Inc.*, 2004 U.S. Dist. LEXIS 11304, (E.D. Pa. Feb. 24, 2005) (arbitration clause allowed court action for injunctive relief and permitted court to award money damages, leading court to construe arbitration clause as including exception for legal issues related to claims for equitable relief ); *Floorcoverings Int'l Ltd. v. Swan*, 2000 U.S. Dist. LEXIS 5855 (N.D. Ill. Apr. 25, 2000) (arbitration provision was elective rather than mandatory).  With respect to *Mastercard Int'l, Inc. v. Fed'n Internationale de Football Ass'n*, also cited by McKesson, the court's holding that the claims in that case were not subject to arbitration sheds little light on the question at issue here because the terms of the arbitration provision in that case were not provided in the decision.  2007 U.S. Dist. Lexis 14208,  (S.D.N.Y. Feb. 28, 2007).

## IV. CONCLUSION

For the reasons stated above, the Court finds that McKesson's claims are subject to arbitration under the License Agreement. Accordingly, the Motion is GRANTED and Plaintiffs' claims are dismissed in favor of arbitration.

IT IS SO ORDERED.

Dated: July 26, 2011

JOSEPH C. SPERO
United States Magistrate Judge